# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE C. ANDRUS, | ) 1:06cv0440 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Irene C. Andrus ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On February 24, 2006, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes. Due to the elevation of Judge Lawrence J. O'Neill to District Court judge, this case was reassigned to the undersigned for all purposes on April 17, 2007.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed for disability insurance benefits on October 15, 2001, alleging disability since February 14, 2001, due to severe neck and back pain. AR 243-246, 259-268. After a denial by the Administrative Law Judge, the Appeals Council remanded the action because the hearing tape was partially inaudible, rendering the record incomplete. AR 223-225. A second hearing was held on September 2, 2003, and on October 10, 2003, the ALJ denied benefits. AR 406-431, 443-453. Plaintiff filed an action in District Court and pursuant to the parties' stipulation, the action was remanded for further proceedings. AR 472-473, 478.

Pursuant to the Order of Remand, a third hearing was held on December 15, 2005. AR 617-643. ALJ Robert A. Evans denied Plaintiff's claim on January 17, 2006. AR 455-468.

Hearing Testimony

ALJ Evans held a hearing on December 15, 2005, in Palmdale, California. Plaintiff appeared with her attorney, William Kuntz. Vocational expert ("VE") Jane Haile also appeared and testified. AR 617.

Plaintiff testified that she was 56 years old and had a GED. AR 634. Her main problems are her neck, lower back and hands. AR 623. She felt that over the past few years, her neck has worsened because she can sit for less time before her shoulders and head hurt and she can't turn her head as well. AR 624. Her lower back has also worsened. The pain goes from her low back through her buttocks, into her left thigh and down to her knee. AR 625. Her leg hurts only when she has overdone it. AR 626.

She testified that the time she can stand varies, depending on what she did the day before or the weather. Some days she can stand for 45 minutes, other days only five minutes. AR 626. She thought she could walk for 20 minutes at most. AR 626. She could sit for half an hour, at most. AR 627. During the day, she cleans a little at a time. She doesn't go out of the house often. AR 628. She alternates between sitting and standing, and has to lay down sometimes

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

when it gets really bad. AR 631. She estimated that she has to lay down on seven or eight days of the month. AR 632.

As for her hands, the numbness has gotten worse. She has to drive one-handed most of the time and switch hands to recover from the numbness. Her wrists hurt if she drives too much. AR 628. She also gets strong pains at the tips of her three middle fingers if she's reaching for something. This is worse in the right hand. She has not had carpal tunnel surgery, although it was suggested. AR 629. She takes Motrin to relieve the pain. AR 636.

She also testified that her concentration and short term memory are bad. AR 630-631.

Plaintiff has not had neck or back surgery, but did try physical therapy. AR 632. She has had pain injections for her lower back. AR 633.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work history. This person could function at the light level, but would need to take breaks from standing and walking every two hours. There would be no limitation on sitting. AR 637-638. This person could not climb or balance. The VE testified that this person could perform all of Plaintiff's past relevant work as a plate maker, dispatcher and telephone solicitor.

For the second hypothetical, the ALJ asked the VE to assume that this person could function at the light level, but could only stand or walk for a period of two to four hours and sit for six hours. This person could occasionally climb, balance, crouch, crawl, stoop and kneel, but could never climb ladders, ropes or scaffolds. This person had to avoid concentrated exposure to extreme cold and vibration. The VE opined that this person could perform Plaintiff's past work of dispatcher or telephone solicitor. AR 638.

For the third hypothetical, the ALJ asked the VE to add the limitation of only occasionally engaging in overhead reaching and gross manipulation activities and handling bilaterally. This person had to avoid concentrated exposure to fumes, smoke, and toxins. This person could perform the position of telephone solicitor. AR 638-639.

For the final hypothetical, the ALJ asked the VE to assume the limitations in Plaintiff's testimony, i.e., a limited ability to stand, walk and sit for long periods of time, and difficulties with her hands and back that cause a lack of concentration only allowing for concentration in less

1  than two hour increments.  AR 639.  The VE testified that this person would not be employable.
2  AR 639.
3       When questioned by Plaintiff's counsel, the VE testified that if a sit/stand option is added
4  to the third hypothetical, the occupational base is eroded.  AR 639.  If this person were incapable
5  of repetitive flexion, extension or rotation of the head, and had to avoid maintaining the head in a
6  fixed position for a prolonged period of time, it would not eliminate the position of telemarketer.
7  AR 640.  If this person could only occasionally engage in fine fingering, it would have an
8  eroding effect on the telemarketing position.  AR 641.
9       <u>Medical Record</u>
10      A February 1, 2002, MRI of Plaintiff's cervical spine revealed a 3 mm disc protrusion at
11 C4-5 and a 4mm disc protrusion at C5-6.  AR 363.
12      On February 20, 2002, Plaintiff saw David L. Drake, M.D, for a consultive orthopedic
13 examination.  Her primary complaint was cervical spine pain.  She indicated that she lived alone
14 and was capable of self care.  On physical examination, Plaintiff sat well during the interview,
15 was able to undress and dress herself and could climb on and off the exam table without aid.  Her
16 gait was normal and she could walk on her heels and toes without difficulty.  There was no
17 cervical spine tenderness or tightness, but she had limitation of range of motion on lateral
18 bending.  There was lumbosacral spine tenderness at L5-S1 midline and bilaterally, but no
19 muscle spasm or tightness.  She had full range of motion in all fingers.  He diagnosed chronic
20 musculoligamentous strain of the cervical and lumbar spine, by history, and degenerative disc
21 disease of the cervical spine, by history.  Based on Plaintiff's history, a review of medical records
22 and recent x-rays, Dr. Drake opined that Plaintiff could occasionally lift and carry 20-25 pounds,
23 10-15 pounds.  She can stand and/or walk for six hours in an eight hour day, with breaks every
24 two hours.  She can sit unrestricted.  She could not climb or balance because of reduced range of
25 motion in her neck.  AR 310-314.
26      State Agency physician Stuart Brodsky, D.O., completed a Residual Functional Capacity
27 questionnaire on March 5, 2002.  He opined that Plaintiff could lift 20 pounds occasionally, 10
28 pounds frequently, could stand and/or walk at least two hours (up to four hours) in an eight hour

day, and could sit for about six hours in an eight hour day. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She had no manipulative limitations. She had to avoid concentrated exposure to extreme cold and vibration. AR 316-323.

Electromyography testing performed in May 2002, revealed a mild degree of right carpal tunnel syndrome. AR 375.

On November 6, 2002, Plaintiff underwent an MRI of her lumbar spine. There was mild disc degeneration at L4-5. AR 369-370.

On May 9, 2003, Plaintiff complained of right shoulder pain. There was limited internal rotation but full muscle strength in all ranges. AR 560.

There is a notation on May 16, 2003, that Plaintiff is disabled from March 10, 2003, through June 30, 2003. AR 559.

In August 2003, Plaintiff's doctor documented good muscle tone and bulk, intact reflexes and normal muscle strength in her upper extremities. Sensation was intact on the right and reduced in the left hand. Phalen sign was positive but Tinel sign was negative. The doctor could not reproduce Plaintiff's complaints of tingling, numbness or pain. AR 374.

In December 2003, Plaintiff's doctor documented positive Tinel but negative Phalen signs in Plaintiff's right arm. She had good grip strength but some decreased sensation. She had positive Tinel and Phalen signs in her left arm, but had normal grip strength and intact sensation. AR 548. Surgery was planned for right carpal tunnel release in January 2004. AR 548.

In January 2004, Plaintiff reported that her carpal tunnel syndrome was worsening and carpal tunnel release was recommended. AR 543.

February 2004, cervical nerve testing was normal. AR 528.

Electromyography testing on March 4, 2004, revealed a moderate degree of right and mild degree of left carpal tunnel syndrome. AR 522.

A March 24, 2004, MRI of Plaintiff's neck showed minimal degenerative changes. AR 521. Physical examination showed that Plaintiff had normal ranges of motion in her neck, grossly intact sensation, normal muscle strength and negative Tinel and Phalen sign. AR 520.

On April 4, 2004, Dr. Brodsky completed another Residual Functional Capacity questionnaire. He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for about six hours in an eight hour day, and could sit for about six hours in an eight hour day. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She would be limited in overhead reaching and handling (gross manipulation). She had to avoid concentrated exposure to extreme cold, vibration and fumes, odors, dusts, gases, etc. AR 644-651.

In May 2004, Plaintiff's treating doctor noted that her May 2004 cervical and lumbar MRIs did not show findings compatible with Plaintiff's complaints. AR 515, 517.

On July 21, 2004, Plaintiff underwent an MRI of her lumbar spine. The test revealed mild disc degeneration at L4-5 (no change since November 2002) and a minimal disc bulge at L5-S1. AR 509-510.

ALJ's Findings

After reviewing the medical record, the ALJ determined that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, and a history of COPD. Finding her subjective complaints not totally credible, the ALJ determined that Plaintiff retained an RFC that would allow her to perform her past relevant work as dispatcher, telesolicitor and plate maker. AR 467.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (bilateral carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, and a history of COPD) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) retains the RFC to perform her past relevant work.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

Here, Plaintiff argues that the ALJ (1) failed to properly evaluate the State Agency physician's opinions; and (2) erred in finding her not credible.

## DISCUSSION

A.  State Agency Physician Opinions

Plaintiff first argues that the ALJ improperly rejected the opinions of Dr. Brodsky, the State Agency physician, set forth in two different Residual Functional Capacity Assessment forms. Specifically, she contends that the ALJ improperly rejected Dr. Brodsky's March 5, 2002, opinion that Plaintiff could stand and/or walk for two to four hours, and his April 4, 2004, opinion that Plaintiff would be limited in overhead reaching and handling (gross manipulation).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Id.*; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). When the opinions of treating and examining sources are contradicted by other sources, they can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d 830-831. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer,* 908 F.2d at 506, n. 4; *Gallant,* 753 F.2d at 1456.

Therefore, pursuant to the weight generally accorded to different types of physicians, the ALJ was proper in giving the opinion of Dr. Drake, the consultive examiner, more weight than the opinions of Dr. Brodsky. *Winans*, 853 F.2d at 647. In rejecting the stand and/or walk limitation, the ALJ explained that based on the medical evidence, Plaintiff has no significant impairment of the cervical or lumbar spine and no neurological issues in her lower extremities.

AR 464. In fact, in Dr. Brodsky's subsequent April 2004, opinion, he indicated that Plaintiff could stand and/or walk for six hours per day. AR 645. His most recent opinion, then, is consistent with Dr. Drake's opinion. Moreover, Dr. Brodsky, in his March 2002, opinion, is the only physician who imposed such a limited ability to stand and/or walk, and generally, the opinion of a nonexamining source does not, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester,* 81 F.3d at 831.

Prior to addressing Plaintiff's claims, the Court notes that Plaintiff identifies the incorrect standard by which the ALJ may discredit the opinion of a non-examining source. She states that the ALJ needed to provide "at a minimum significant and legitimate reasons" for rejecting Dr. Brodsky's opinions. However, as explained above, this standard is applied only to the opinions of examining physicians, whether treating or consultive. Rejecting a nonexamining source does not necessarily have its own standard, but rather is logically intertwined with accepting or rejecting an examining physician's opinion.

Plaintiff argues that the ALJ's finding that her degenerative disc disease was a severe impairment is "internally inconsistent" with his statement that Plaintiff has no significant impairment, and his statement therefore is insufficient to justify the rejection of Dr. Brodsky's opinion. However, Plaintiff fails to recognize that a finding that an impairment is severe does not necessarily mean that the ALJ will find resulting limitations. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Plaintiff next argues that the ALJ improperly rejected Dr. Brodsky's April 2004, opinion that she would be limited in overhead reaching and handling. She contends that the ALJ's finding that this limitation is not supported by the evidence is incorrect. In rejecting the overhead reaching limitation, the ALJ explained that Dr. Brodsky did not examine Plaintiff or review all of the records. AR 464. As discussed above, the ALJ is entitled to give greater weight to the opinion of an examining physician. After examining Plaintiff and reviewing her medical records, Dr. Drake did not assess any such restrictions. In accepting Dr. Drake's limitations, the ALJ

9

explained that treatment records subsequent to his examination did not show any further deterioration in her carpal tunnel syndrome. AR 463. He also found that the treatment records did not show a significant objective change in Plaintiff's cervical and lumbar spine since February 2002, the date of Dr. Drake's examination. Dr. Brodsky's overhead reaching limitation was not consistent with the record as a whole and the ALJ was correct in rejecting it on this basis. 20 C.F.R. § 404.1527(d).

Insofar as Plaintiff contends that the ALJ should have recontacted Dr. Drake or sent Plaintiff for additional examinations prior to accepting Dr. Drake's 2002 opinions, his argument is without merit. An ALJ has a duty to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Plaintiff correctly points out that Dr. Drake's opinion was formed almost four years prior to her most recent hearing. However, there is ample evidence of her medical treatment *after* her visit with Dr. Drake. The ALJ analyzed the recent evidence and concluded that Plaintiff's conditions had not deteriorated so as to render Dr. Drake's opinion outdated. Therefore, the record was not ambiguous or inadequate so as to trigger the ALJ's duty to gather additional evidence.

B.    Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to provide significant or legitimate reasons for rejecting her subjective complaints and failed to discuss the factors "mandated" by SSR 96-7p.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The

ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

As a threshold matter, Plaintiff incorrectly argues that SSR 96-7p sets forth a mandatory procedure through which an ALJ must assess the claimant's credibility. While courts give the SSRs some deference, they do not have the force of law. *Holohan v. Massanari,* 246 F.3d 1195, 1203, n. 1 (9th Cir. 2001). The ALJ therefore need not discuss all seven factors as set forth in SSR 96-7p and the Court will not find error on that basis.

Here, the ALJ set forth Plaintiff's allegations as to her limitations and explained first that her "subjective complaints and alleged limitations are out of proportion to the objective findings as noted above." AR 465. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ contrasted Plaintiff's allegations of constant, intolerable neck pain with the minimal findings of the imaging studies. In fact, as the ALJ noted, one of Plaintiff's providers stated on May 4, 2004, that the MRIs show no findings compatible with her complaints. AR 465, 515, 517. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly relied on objective findings and physician's opinion to discredit claimant's testimony). He also explained that despite Plaintiff's allegations of inactivity and inability to function, there was no evidence of severe disuse muscle atrophy that one would expect given her allegations. AR 465.

The ALJ next analyzed Plaintiff's treatment and explained that it was not consistent with her allegations. AR 465. *Burch*, 400 F.3d at 681 (ALJ is permitted to consider lack of medical treatment in assessing credibility). As he explained, there is no record of physical therapy,

injections or surgery for carpal tunnel syndrome.[4]  AR 465.  Although she alleges constant, intolerable neck pain, no physician has recommended surgery or treatment at a pain management clinic.  AR 465.  She does not use an assistive device and she indicated that she uses only over the counter medication.  AR 465-466, 493.

Finally, the ALJ noted several inconsistencies between her allegations and her actions.  For example, Plaintiff continued to smoke despite a history of pulmonary disease and against the advice of her doctors.  AR 466.  He also explained that although Plaintiff cites financial reasons for not obtaining treatment after September 2004, she is able to afford cigarettes and there is no evidence that she sought treatment at a low cost County facility.  AR 466.  Finally, although she reports anxiety and panic attacks and has taken medications, she has never seen a psychiatrist or other mental health professional.  AR 466.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

In support of her argument, Plaintiff argues that her daughter's statements are consistent with her alleged symptoms and limitations.  Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Id.*

In his decision, the ALJ explained that he considered her daughter's allegations, but did not find them credible in light of his findings relating to Plaintiff and the objective evidence.  Additionally, he did not believe her allegation that Plaintiff took all morning to type a letter due to her limitations, explaining that there are many reasons why Plaintiff would craft a letter in a careful, slow manner.  AR 466.  The ALJ therefore properly considered her daughter's allegations and properly explained why he rejected them. .

---

[4] Although there is a suggestion in the record that carpal tunnel release should be scheduled, Plaintiff did not undergo the procedure.  AR 543, 548.

1  "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an
2 allegation ... and those findings are supported by substantial evidence in the record, our role is
3 not to second-guess that decision." *Fair,* 885 F.2d at 603.

### **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Irene C. Andrus.

IT IS SO ORDERED.

Dated:   **April 23, 2007**            **/s/ Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE